```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
MOHAMED KAID HEZAM AL SAIDI,                                :
B.M.K.A., a minor child, AND S.M.K.A., a                    :     **MEMORANDUM OPINION**
minor child,                                                :
                                                            :     21-cv-3393 (BMC)
                        Plaintiffs,                         :
                                                            :
        - against -                                         :
                                                            :
U.S. EMBASSY IN DJIBOUTI, et al.,                           :
                                                            :
                        Defendants.                         :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

This case is before me on plaintiffs' motion for a temporary restraining order directing defendants to adjudicate their Form I-130 petitions by June 23, 2021. Plaintiffs filed the motion on June 16. On June 18, I held a telephonic hearing. I denied the motion on the record, noting that a written opinion would follow. This is that opinion.

## BACKGROUND

Plaintiffs are a United States citizen (Al Saidi or plaintiff-petitioner) and his two minor children (B.M.K.A. and S.M.K.A., or plaintiff-beneficiaries), who were born in Yemen and have lived there throughout their lives. B.M.K.A. will turn 18 years old on June 29, 2021, and S.M.K.A. will turn 18 the following year. Plaintiff-petitioner asserts that he thought citizenship would accrue automatically to his children and that he did not learn of the conditions that must be satisfied under 8 U.S.C. § 1431(a) until February 2021. A ten-year-old letter from the United States Embassy in Sana'a explained to Al Saidi that his minor children's passport requests were denied because "the child's U.S. citizen-parent could not present sufficient evidence to confirm five years of physical presence in the U.S. prior to the child's birth. Therefore, your child cannot

acquire U.S. citizenship by transmission." But plaintiff-petitioner asserts that he never received that letter.

Plaintiffs began the process of filing a Form I-130 petition for an alien relative on March 10, 2021, when their counsel wrote to the consulate in Djibouti requesting an emergency direct I-130 filing, citing the circumstance that the children were in danger of aging out of derivative citizenship. The attorney consular scheduled "an I-130 Local File Immigrant Petition Appointment" for plaintiffs for April 25; plaintiffs requested the appointment be rescheduled for May 2, which was accommodated; and plaintiffs then traveled to Djibouti for the appointment.

At the appointment, plaintiff-petitioner submitted the I-130 packages and paid the associated fee. After consular officers reviewed the applications, they asked plaintiff-petitioner a series of questions. They asked him if he had any other pictures with his children, to which he replied "no"; how old B.M.K.A. was; how many children plaintiff-petitioner had and whether any were U.S. citizens; and whether there was anything else he wished to share with them about his family, to which he replied "no". One of the officers then told plaintiff-petitioner that "we do not take these types of cases here, we will send these to USCIS in America." They gave him a receipt for the paid fee.

The next day the consular officers forwarded the applications to the National Visa Center to be handed off to USCIS, including memoranda explaining that the two I-130 petitions were "Not Clearly Approvable" when interviewed because (i) the birth certificate was filed more than five years after the beneficiary was born; (ii) the petitioner was unable to show that he was physically present in Yemen at the time of conception for both children; and (iii) the petitioner had almost no photographic evidence showing a relationship with his children over time.

Plaintiffs filed the instant suit on June 15. On June 17, the physical applications arrived at USCIS and, on the same date, USCIS issued a Request for Evidence (RFE), misdated as having been issued on June 22. Plaintiffs responded to the RFE on June 18 shortly before the telephone hearing.

**DISCUSSION**

Plaintiffs request that the Court: (1) issue a writ of mandamus and preliminary injunction directing defendants to adjudicate plaintiffs' direct I-130 petitions no later than June 23, 2021; and (2) declare that defendants' delay in adjudicating plaintiffs' I-130 Petitions is unreasonable and in violation of the Administrative Procedure Act (APA), and that plaintiffs are entitled to prompt adjudication of their direct I-130 petitions no later than June 23, 2021.

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). A district court may issue a mandatory preliminary injunction, which commands the Government to perform a specific act, only if 1) the movant establishes that it will suffer irreparable harm; and 2) the movant has shown a clear or substantial likelihood of success on the merits. Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006). Additionally, the Court must find that the balance of hardships tips decidedly toward the party requesting the preliminary relief. See Gold v. Feinberg, 101 F.3d 796, 800 (2d Cir. 1996). Finally, "the court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction." Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (quotation marks omitted).

**I.   Plaintiffs have not demonstrated irreparable harm**

Plaintiff-beneficiaries risk losing the ability to qualify for derivative citizenship. Derivative citizenship is automatically acquired for children born outside the United States and

3

lawfully admitted for permanent residence when all of three conditions are fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization; (2) The child is under the age of eighteen years; and (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence. 8 U.S.C. § 1431(a). "[D]erivative citizenship is automatic; that is, when certain conditions exist, a child becomes a U.S. citizen even though neither parent, nor the child, has requested it and regardless of whether any of them actually desires it." Lewis v. Gonzales, 481 F.3d 125, 131 (2d Cir. 2007). "Congress enacted the derivative citizenship statute to ensure that alien children whose real interests were located in America with their custodial parent, and not abroad, should be automatically naturalized." Duarte-Ceri v. Holder, 630 F.3d 83, 89–90 (2d Cir. 2010) (quotation marks omitted).

Here, plaintiff-beneficiaries have not fulfilled the third condition under the statute: they are not and have never been in the legal and physical custody of plaintiff-petitioner, their citizen parent, pursuant to a lawful admission for permanent residence. For B.M.K.A., the time is running out, because even "a pending application for lawful permanent resident status is insufficient" to satisfy the third requirement. Moreira v. Sessions, 681 F. App'x 61, 63 (2d Cir. 2017) (no derivative citizenship where plaintiff did not become a permanent resident until two months after his eighteenth birthday). However, any harm to S.M.K.A., who still has over a year before reaching age 18, is not speculative and not sufficiently "actual and imminent" to justify a TRO. Coronel v. Decker, 449 F. Supp. 3d 274, 281 (S.D.N.Y. 2020).

As to B.M.K.A., plaintiffs have not made a strong showing that B.M.K.A.'s inability to acquire derivative citizenship is an irreparable harm. If B.M.K.A.'s Form I-130 petition is granted and other conditions are met, B.M.K.A. will remain eligible until age 21 to receive an

immigrant visa through plaintiff-petitioner under the Immigration and Nationality Act, and possibly longer under the Child Status Protection Act.  See Scialabba v. Cuellar de Osorio, 573 U.S. 41, 45 (2014).  Through that process, B.M.K.A. could immigrate to the United States and eventually become a naturalized citizen.  It is admittedly a more onerous process than derivative citizenship, which is automatic once certain conditions are met.  But there has not been a strong showing that the difference between the benefits available to B.M.K.A. as a derivative citizen and an eventual naturalized citizen are so great as to constitute an irreparable harm.  Further, any delay in processing the Form I-130 applications would not cause a family separation that might contribute to an irreparable harm because plaintiff-petitioner and plaintiff-beneficiaries already live in separate countries.

But even if I were to assume that B.M.K.A. faces an irreparable harm for purposes of this motion and that the balance of hardships weights in plaintiffs' favor, the TRO would not issue because plaintiffs have not demonstrated a likelihood of success and the public interest would be disserved by the relief sought.

**II.     Plaintiffs have not demonstrated a likelihood of success**

    A.     There has been no unreasonable delay

Courts in this district generally evaluate claims that agencies have unreasonably delayed in adjudicating plaintiffs' pending administrative matters by applying a six-part standard set forth in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984).  Under that standard:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of

> expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

The Court need not go through each of the TRAC factors here because plaintiffs' position that defendant "must process and decide visa applications within the *same day* it schedules an interview appointment" is so unsupportable, and only weeks have passed since the submission of plaintiff-beneficiaries' petitions.

First, plaintiffs' position would mean that the government is not entitled to *any* delay, but the APA is concerned only with an unreasonable delay. There is nothing in the record or common experience to suggest that these petitions must be processed within days or weeks, even in exceptional circumstances. The time for processing petitions such as these is typically measured in years. "[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable." Almakalani v. McAleenan, No. 18-CV-398, 2021 WL 980846, at *10 (E.D.N.Y. Mar. 16, 2021); see Gordon v. Holder, 368 F. App'x 250, 253 (2d Cir. 2010) ("[T]here is no basis in the record or in common experience to suggest that four months is an unreasonably long time for processing a naturalization application."); Cuthill v. Blinken, 990 F.3d 272, 274 (2d Cir. 2021) ("First, the sponsoring parent files a petition on Form I-130, Petition for Alien Relative, on behalf of his or her beneficiary son or daughter. The U.S. Citizenship and Immigration Services ("USCIS") thereafter reviews the petition and, if everything is in order, approves it. The process can take up to a year or more.").

Moreover, in applying the "competing priority" factor, it is appropriate to refuse to grant relief, even if all the other factors considered in TRAC favor it, where a judicial order putting the

petitioner at the head of the queue would simply move all others back one space. Yan Chen v. Nielsen, No. 17-CV-7157, 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) (citing Mashpee Wampa-noag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). "[A]gencies must 'juggle competing duties' and as a result [courts] will generally not find a Section 706(1) violation in the absence of 'evidence the agency ... treated the petitioner[s] differently from anyone else, or that officials not working on [plaintiffs'] matters were just twiddling their thumbs.'" Almakalani, 2021 WL 980846, at *10 (citation omitted).

Here, plaintiffs' emergency is entirely of their own making. Even if they were unaware that to qualify for automatic derivative citizenship plaintiff-beneficiaries must be in the legal and physical custody of their citizen parent pursuant to a lawful admission for permanent residence before they turn eighteen years old, 8 U.S.C. § 1431(a), they could have begun this process at any time in the past 17 years. But perhaps because they do not have a real interest in the United States, they have lived in Yemen up until this time, and not with their citizen parent in the United States. The competing priority factor weighs strongly against relief that would permit plaintiffs to circumvent the line and receive final decisions on their applications sooner than other Form I-130 applications, simply because plaintiffs did not earlier pursue derivative citizenship.

  B. <u>There is no basis for requiring consular officers to accept and adjudicate direct I-130 petitions in any embassy</u>

For their APA claim, plaintiffs challenge the consular officers' failure to follow their own regulations, which in plaintiffs' estimation required the consular officers to accept plaintiffs' direct-filed I-130 petitions at the interview and immediately adjudicate them. But the APA expressly exempts from judicial review agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This exception to reviewability applies when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's

7

exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830 (1985). "Put differently, judicial review is unavailable where there is no 'judicially manageable standard[]' by which to judge the agency's action." Ahmed v. Cissna, 327 F. Supp. 3d 650, 671 (S.D.N.Y. 2018), aff'd sub nom. Ahmed v. Cuccinelli, 792 F. App'x 908 (2d Cir. 2020).

"USCIS enjoys broad discretion in its processing of I-130 petitions, and it is constrained by neither the Immigration and Nationality Act nor the implementing USCIS regulations in this respect." Ahmed, 792 F. App'x at 910. "Indeed, while USCIS may delegate the authority to accept I-130 petitions to the State Department's consular officers on a case-by-case basis or, in exceptional circumstances, by issuing a blanket authorization, its decision to do so is discretionary." Id. "[E]ven where USCIS issues a blanket authorization, the Department of State 'retains its own discretion to allocate and prioritize its resources.'" Id. Because USCIS enjoys broad discretion in its processing of I-130 petitions, the decision of whether or not to accept and adjudicate direct I-130 petitions at any embassy is not subject to judicial review.

The consular officers' initial agreement to accept the direct I-130 petition did not create a nondiscretionary duty to adjudicate them. Plaintiffs invoke cases about unexplained inconsistencies in agency adjudications, but there was no general policy at work here and a subsequent irrational departure from that policy. Rather, in a highly discretionary decision, the consular officers agreed to accept the I-130 petitions directly at the embassy during an interview appointment. Then, when the petitions were presented, the officers concluded that they could not adjudicate these particular petitions. Although it is not clear if this determination was articulated to plaintiffs at the time, the officers issued memoranda that the applications were not "clearly approvable." But there was at least some indication to plaintiff-petitioner that something was not satisfactory in the petitions, as he recalls the questions posed by the officers

8

about his relationship with his children and their ultimate conclusion that they "do not take these types of cases here" and would have to send the application to USCIS in America.

When applications are not "clearly approvable", they are sent to USCIS to issue a request for further information, as occurred here. This is done pursuant to USCIS's procedures for reviewing evidence supporting family-based petitions issued by authorities in Yemen.[1] On May 25, 2012, USCIS issued a policy memorandum entitled "Supplemental Guidance for Adjudicating Family-Based Petitions Supported by Relationship Documents Actually or Purportedly Issued by a Civil Authority in Yemen" (the "Yemen Guidance"). Almakalani, 2021 WL 980846, at *2. The Yemen Guidance set forth procedures for requesting additional corroborating evidence to assist in the adjudication of Form I-130 petitions supported by Yemeni documents, and was based on State Department findings that "civil records available to Yemeni applicants are particularly susceptible to error or fraud because they are not created contemporaneously with the events that they purport to document." Id. at *2-7 (upholding the procedures and policies set forth in the Yemen Guidance as consistent with USCIS's legal authority and in accordance with law).

Because the applications were not clearly approvable, they needed to be adjudicated by USCIS in America. This is not an arbitrary and capricious departure from agency practice. Rather, after attempting to exercise discretion to review the applications, the consular officers concluded that these petitions were not ones that they could process at the embassy. They accepted the petitions and the filing fee and stated that they would send the petitions to USCIS

---

[1] It is worth noting that the U.S. Embassy in Djibouti's website states that, as of July 2, 2015, it no longer accepts I-130s for Yemeni evacuees and that any exception to this policy is made on a case-by-case basis in conjunction with other existing visa and passport processing and on advice of USCIS Rome. *I-130 Petition Filing in Djibouti*, U.S. Embassy in Djibouti (last visited June 17, 2021), https://dj.usembassy.gov/visas/immigrant-visas-returning-resident-visa/130-petition-filing-djibouti/. The minor plaintiffs are Yemeni residents, not evacuees to Djibouti, but that guidance further demonstrates that there is no general policy of accepting applications for Yemen-born individuals at the embassy.

for adjudication.  Plaintiffs' position that the State Department should use applicants' interviews to resolve any concerns rather than send the applications to USCIS is not something I can order; the decision to send such applications elsewhere falls within the broad discretion USCIS enjoys in processing such petitions and is not subject to judicial review.  See Ahmed, 792 F. App'x at 910.  Similarly, even if the State Department had available to it historical evidence that could corroborate plaintiffs' relationship, such as DNA test results, it is not the Court's role to mandate that this evidence be immediately considered upon filing, rather than as part of the RFE process.

Plaintiffs' attempt to use estoppel against the government is also not likely to succeed.  Equitable estoppel is available against the government only in "the most serious of circumstances," and requires "a showing of affirmative misconduct by the government."  Rojas-Reyes v. INS, 235 F.3d 115, 126 (2d Cir. 2000).  There has been no such showing here.  This was not a nefarious plot to force plaintiffs to fly across the globe to an embassy.  It was simply an obstacle that sometimes arises in the immigration process.

To the extent plaintiffs are challenging the determination made at the consulate that the petitions were not clearly approvable and would need to be sent to USCIS, that argument is likely to fail under the doctrine of consular non-reviewability.  "The doctrine of consular nonreviewability provides that courts do not have jurisdiction to review decisions made by consular officers regarding the grant or denial of visas."  Gogilashvili v. Holder, No. 11-cv-1502, 2012 WL 2394820, at *3 (E.D.N.Y. June 25, 2012).  It precludes judicial review not only under the Immigration and Nationality Act, but also under other jurisdictional statutes, such as the APA and the Declaratory Judgments Act.  Id.  "[C]ourts do not 'have jurisdiction to review a consular official's decision, even if its foundation was erroneous, arbitrary, or contrary to agency

regulations.'" Aquino v. Immigr. & Customs Enf't, No. 09-CV-0912, 2009 WL 1406625, at *2 (E.D.N.Y. May 18, 2009).

Plaintiffs' Mandamus Act claim is not likely to succeed for all of the above reasons. Plaintiffs must show that "[i] there is a clear right to the relief sought; [ii] the Government has a plainly defined and peremptory duty to perform the act in question; and [iii] there is no other adequate remedy available." Ahmed, 327 F. Supp. 3d at 672 (quoting Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008)). As described above, there is no clear duty to accept a direct I-130 petition at any embassy, nor to process that petition within the span of days. For similar reasons, plaintiffs' claims for denial of rights of U.S. Nationals and under the Equal Justice Act do not have a likelihood of success because there is no clear right to the relief plaintiffs seek. And without an underlying substantive right, the Declaratory Judgment Act cannot provide one. See Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (Declaratory Judgment Act is a "remedial arrow in the district court's quiver").

**III.  The public interest does not weigh in favor of the requested relief**

The public interest would be disserved by granting plaintiffs the relief they seek. As an initial matter, it is in the public's interest for I-130 decisions to be made with care, not rubber-stamped in a single day as plaintiffs would have me order here. Under the INA and its implementing regulations, a U.S. citizen or legal permanent resident may petition for an alien relative to be deemed eligible for an immigrant visa by filing a Form I-130 Petition for Alien Relative. "The purpose of Form I-130 is to establish the existence of a qualifying relationship between the U.S. citizen . . . and the alien beneficiary." Almakalani, 2021 WL 980846, at *1. To protect against error and fraud in processing Form I-130 petitions, there are procedures in place for evaluating such petitions. As described above, USCIS has even implemented special

procedures for reviewing evidence supporting family-based petitions issued by authorities in Yemen because of concerns about the accuracy of civil records available to Yemeni applicants. Id. at *2-7. The risk of error and fraud, and even security threats, means that it is not in the public's interest for a court to force the rapid adjudication of Form I-130 petitions.

More importantly, it is not in the public's interest to allow these plaintiffs to cut to the front of the line. As described above, the processing of I-130 petitions can take months and even years. Plaintiffs are not entitled to special treatment simply because they were unaware of the time limit for derivative citizenship, and it would be too easy for future petitioners to cite similar circumstances in an attempt to get their applications first priority. Derivative citizenship is automatically acquired by children born outside the United States and lawfully admitted for permanent residence once three conditions have been fulfilled. 8 U.S.C. § 1431(a). The fact that the minor plaintiffs have not sought lawful admission for permanent residence until the eve of their eighteenth birthdays, a self-created emergency, does not provide a basis for allowing them to skip over everyone else who has been waiting years for adjudication of their petitions.

_____<br>U.S.D.J.

Dated: Brooklyn, New York
   June 18, 2021